### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC KLEINSMITH, | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| HUGHES INVESTMENT, LP, | : | |
| Defendant. | : | |

### COMPLAINT

Plaintiff, Isaac Kleinsmith, by and his undersigned attorneys, Broughal & DeVito, LLP, files this Complaint against Defendant Hughes Investment, LP and in support thereof avers as follows:

### PARTIES

1.    Plaintiff Isaac Kleinsmith ("Plaintiff" or "Kleinsmith") is an adult individual, age 30, who identifies as a gay male.

2.    Defendant Hughes Investment, LP ("HI") is a Pennsylvania limited partnership that operates McDonald's restaurants in Berks, Lehigh, and Schuylkill Counties.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

4.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2), as a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendants reside in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On July 26, 2023, Plaintiff filed EEOC Charge No. 530-2023-06999, which was dual-filed with the Pennsylvania Human Relations Commission (the "Original Charge").

7.      Plaintiff received a right to sue letter from the EEOC and this Complaint is filed less than 90 days after the right to sue letter was received.

8.      More than 180 days have passed since the filing of the Original Charge, and Plaintiff has exhausted his administrative remedies and is entitled to bring this civil action.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a 30-year-old gay male who entered into a sexual and cohabiting relationship with Defendant Robert Hughes ("Hughes"), owner of Hughes Investment, LP, beginning in or around 2018.

10.     Plaintiff was hired by Hughes Investment, LP (Defendant HI) on April 1, 2018, and was its Human Resources, Training, and Customer Care Supervisor, earning a base salary of $73,000 per year with potential bonuses.

11.     Plaintiff, Hughes, and Richard Wieder, Jr. (Vice President of Defendant HI and Hughes' long-time partner) were part of a sexual relationship referred to as a 'throuple'.

12.     Plaintiff lived with Hughes and Wieder.

13.      On February 18, 2023, the sexual relationship with Plaintiff ended and Plaintiff moved out of Hughes' home on or about March 2, 2023.

14.      The following day Hughes told Plaintiff that he wanted the relationship to continue and threatened to fire him if he did not return.

15.      Plaintiff declined to return to the relationship or to Mr. Hughes' home.

16.      After ending the relationship, Plaintiff experienced escalating retaliation, threats, and harassment from Hughes, including but not limited to threats of termination, sexual comments, efforts to sabotage Plaintiff's employment, and discriminatory and retaliatory treatment as further detailed below.

17.      Specific retaliatory, harassing, and discriminatory acts committed by Hughes and other managerial agents of HI are numerous and include, without limitation:

       a.      Making unfounded allegations of insubordination and poor work performance;

       b.      Sexually harassing Plaintiff Kleinsmith on multiple occasions, begging him to come back to the throuple and making threats that he would not have a job if Plaintiff Kleinsmith did not come back to the relationship;

       c.      Telling Plaintiff Kleinsmith that he will make it impossible for Plaintiff Kleinsmith to continue to work at HI;

       d.      Hughes stating to Plaintiff Kleinsmith "you are abandoning your family [referring to the throuple] just like your father;"

       e.      On July 20, 2023, Hughes told Plaintiff Kleinsmith that at a McDonald's meeting, he told another Owner/Operator that they would be unable to hire

Plaintiff Kleinsmith to prevent Plaintiff Kleinsmith from getting another job from another McDonald's Owner/Operator;

      f.      On one occasion where Plaintiff Kleinsmith attempted to address Hughes' threats, Hughes said, "Stop f***ing with me and the company on all your wants, know the ranking you have selected to have in this company;"

      g.      Hughes threatening Plaintiff Kleinsmith with suspension for going to Chicago for a prearranged work-related McDonald's event ("Chicago Trip") and taking a previously approved request for two days off from work that had occurred 11 to 13 days before;

      h.      When Plaintiff Kleinsmith went on the Chicago Trip, Hughes said, "Enjoy Friday night in Chicago.  I am sure you will have "loads" (referring to semen) of fun!"  Hughes also said that Plaintiff Kleinsmith would be visiting hotel rooms in Chicago and would "certainly find someone to wine, dine, and accommodate sleeping arrangements;"

      i.      Refusing to acknowledge the Chicago Trip as a business trip and refusing to reimburse Plaintiff Kleinsmith for flight travel, hotel, transportation and food allowance, claiming that it was a "party trip" and telling Plaintiff Kleinsmith that he would have to use his "holidays" for the days in Chicago;

      j.      Not permitting Plaintiff Kleinsmith to take more than two consecutive days off of work when other employees were permitted to do so, to attempt to control what Plaintiff Kleinsmith does on his personal time;

k.      Threatening to deny Plaintiff Kleinsmith time off (paid or unpaid) if Plaintiff Kleinsmith took time off from work to go to Florida to move his belongings out of Hughes' condominium;

l.      Advising Plaintiff Kleinsmith that HI would not support a McDonalds's Owner/Operator Pride Network (MOOPN) event that the McDonald's USA brand was supporting because Plaintiff Kleinsmith was involved with the event;

m.      Regularly attempting to engage Plaintiff Kleinsmith in conversations regarding Plaintiff Kleinsmith's sex life and sexual relationships, which Hughes thinks that Plaintiff Kleinsmith is having with others;

n.      Using HI's payroll system to find out where Plaintiff Kleinsmith is currently living and making comments such as:  "You certainly advanced in life . . . NOT," "So, welcome back to lower/middle class," "very, very small apartment you are sharing;"

o.      Threating to take away vacation time for the year even though as of January 25, 2023, Plaintiff Kleinsmith's job included "unlimited vacations" on the list of benefits;

p.      Reducing Plaintiff Kleinsmith's holiday day because Plaintiff Kleinsmith had a three-day weekend because Plaintiff Kleinsmith had an approved request for this time off;

q.      Withholding Plaintiff Kleinsmith's bonuses and diverting money from Plaintiff Kleinsmith's bonus to pay himself back for personal trips that they had originally planned together under the pretense that the personal trips were business trips; and

r.          Refusing to reimburse Plaintiff Kleinsmith for business expenses.

18.       Following Defendant HI's receipt of the Original EEOC Charge filed by

Plaintiff Kleinsmith on or about July 26, 2023, Defendant HI harassed and retaliated

against Plaintiff Kleinsmith for filing the Original Charge as follows:

a.          On September 7, 2023, Plaintiff Kleinsmith was directed to work

only within Defendant's Cedar Crest store as a Manager to do tasks that he was not

brought in to do. Cedar Crest is a store that failed a McDonald's official visit that resulted

in two managers getting fired. Plaintiff Kleinsmith was advised that he was to be in

charge of the schedule and hiring at the store but he ultimately ended up having to open

and/or close multiple times per week and he was given very undesirable shifts with little

staff. Upon information and belief, this assignment was made in an attempt to make it

extremely uncomfortable for Plaintiff Kleinsmith to continue to work for HI to attempt to

force him to resign.

b.          Repeated attempts to take back approved time off and change

Plaintiff Kleinsmith's work schedule to make it extremely difficult for him to have a

personal life outside of work.

c.          On January 23, 2024, Plaintiff Kleinsmith called out of work sick

with an ear and sinus infection. Plaintiff Kleinsmith spoke to Steve Ferraro, Director of

Operations ("Mr. Ferraro"). Mr. Ferraro responded, "feel better, get a doctor's note."

When Hughes found out that Plaintiff Kleinsmith called out sick, he said it was planned,

it would be viewed as insubordination and would be "addressed at future legal litigation."

Mr. Ferraro later advised Plaintiff Kleinsmith that Hughes kept going on about him

calling out sick for the next couple of weeks.

      d.      On January 23, 2024, Hughes advised Plaintiff Kleinsmith that he would not be getting paid for four (4) holidays that he was owed from 2023, totaling $1,076.80, which were holidays that Plaintiff Kleinsmith was unable to take off as he as given a strict schedule of when he was able to take off and which days he would be allowed to take off.

      e.      Hughes has repeatedly falsely alleged to Mr. Ferraro that Plaintiff Kleinsmith has performance issues.

      f.      Hughes has attempted to revoke approved requests off from work that Mr. Ferraro had already approved for Plaintiff Kleinsmith, including dates related to a VACAYA cruise.  Hughes had originally approved time off for the February VACAYA cruise himself.

      g.      Alleging that Plaintiff Kleinsmith was not adequately performing his job by not participating in McDonald's coop incentives and claiming that it was HR's job to involve HI when Hughes was the sole person in the company who received emails about the incentives. HI's Field Business Partner, Kelly Talento, confirmed that the emails for most of the incentive programs go directly to Hughes as the Owner Operator with no way to add anyone else to the mailing list.

      h.      On February 5, 2024, Plaintiff Kleinsmith was sent a written notice in regard to attendance for being 30 minutes late due to a major highway being closed on his way to work.  Other supervisors, who had not had sexual relations with Hughes, were not given such written notices for tardiness under the same type of circumstances.

i.        On February 5, 2024, Hughes started calling the stores where Plaintiff Kleinsmith was scheduled as opposed to Plaintiff Kleinsmith's cell phone to see if Plaintiff Kleinsmith was where he was supposed to be, which is not a common practice with other supervisors.

j.        On February 23, 2024, Hughes took a photograph of Plaintiff Kleinsmith in a jockstrap outfit at an event on a gay cruise.

k.        On February 25, 2024, Hughes sent an email stating again that there was a lack of leadership in response to HI not participating in incentives that he did not inform Plaintiff Kleinsmith about.

l.        On March 2, 2024, Plaintiff Kleinsmith asked Mr. Ferraro to look at his salary as it had been a year since he received an increase.  Mr. Ferraro said that no one was getting raises as profit was down, however, other Supervisors, who had not had sexual relations with Hughes, such as Anthony Carmelo, who received an increase in November 2023; and Steve Ferraro, Josh Purcell and Paula Moser who all received increases in February 2024.  On May 24, 2024, Hughes and Ferraro informed Plaintiff Kleinsmith that these increases were due to increased responsibilities in their individual roles with the addition of the new store.  Plaintiff Kleinsmith also had an increase in responsibilities with the addition of the new store, but was not given an increase like the other supervisors.

m.        On September 4, 2023, Paylocity Salesperson John Sisto reached out to Plaintiff Kleinsmith to inform him that Hughes saw his social media post about going to the US Open with Paylocity as a potential vendor and asked if Mr. Sisto took

Plaintiff Kleinsmith to the event from a personal standpoint or a business standpoint. Upon information and belief, Hughes does not have social media.

n.      On September 15, 2023, Plaintiff Kleinsmith was given the task of completing a Fraud audit for the 401(k) plan. Plaintiff Kleinsmith sent an email to Mr. Ferraro letting him know that he felt uncomfortable completing this document knowing that Erez Begerano was "employed" and that Mr. Ferraro was directed to fluctuate his hours so it looked like he worked. Erez Begerano was not actually performing any work for Hughes Investment.

o.      On January 18, 2024, Mr. Ferraro informed Plaintiff Kleinsmith that he would need permission to leave before 5 p.m. Mr. Ferraro tried to get Plaintiff Kleinsmith to change two days that he worked 8:00 a.m. to 4:00 p.m. but Plaintiff Kleinsmith was unable to as he needed to leave work at 4 p.m. for a flight and a show. Plaintiff Kleinsmith was given direction that would prevent him from taking two days off in a row, in response to Mr. Ferraro approving his request off to have a half day on Friday and a day off on Saturday. Plaintiff Kleinsmith was given direction to use his remaining 5.5 holiday paid days off. Later Plaintiff Kleinsmith was informed that he lost the holiday days from 2023. No other management employees were prohibited from taking two days off in a row.

p.      On January 29, 2024, during a conversation with Mr. Ferraro, Mr. Ferraro mentioned that Hughes was stuck on Plaintiff Kleinsmith's calling out sick the previous week. Mr. Ferraro also mentioned that he would push back against Hughes when he would make claims about Plaintiff Kleinsmith's poor work performance as Mr. Ferraro was happy with Plaintiff Kleinsmith's work performance and that Plaintiff

Kleinsmith did not have any notice of performance issues other than the threats he received from Hughes.  Mr. Ferraro stated "I just know I'm going to get s**t for approving that day" in response to his approval of Plaintiff Kleinsmith's request to work 8:30 a.m. to 4:30 p.m. on Valentine's Day.   The original schedule was 8:00 a.m. to 4:00 p.m. but Mr. Ferraro asked Plaintiff Kleinsmith to change it to 8:30 a.m. to 4:30 p.m. to compromise.

q.      On April 2, 2024, Hughes and Mr. Ferraro discussed the McDonald's Worldwide trip to Barcelona in the text chain with Charing Party Kleinsmith.  Plaintiff Kleinsmith was not a part of this conversation and Hughes talked about all of the fun things that they were going to be doing in Barcelona to rub it in Plaintiff Kleinsmith's face.

r.      On April 13, 2024, Plaintiff Kleinsmith asked Mr. Ferraro to review his requests for time off through August because they were not looked at or addressed.  Plaintiff Kleinsmith submitted his requests for time off on February 25, 2024.

s.      On May 16, 2024, Hughes questioned a company credit card charge for Werner Lumber in the amount of $23.30.  Mr. Ferraro replied that Werner Lumber was a hardware store in Pine Grove which is where there is a store.  Plaintiff Kleinsmith was off this day but upon his return, he replied that it was for a clogged toilet, stating that he only uses the company card for company expenses.

t.      On June 12, 2024, Hughes began questioning Plaintiff Kleinsmith about credit card charges for obvious business expenses.  Hughes did not question other management employees about their credit card charges.

u.      On June 14, 2024, Hughes insisted that Plaintiff Kleinsmith send a daily text on his days off saying "Off" to inform Hughes that Plaintiff Kleinsmith was not working that day, even though Plaintiff Kleinsmith's schedule had been submitted to his supervisor for the entire month.

v.      On June 14, 2024, Hughes continued to state that Plaintiff Kleinsmith's trip to McDonald's Headquarters was not a business trip.  He stated that "You continue to try to be litigious every day while in our employment." And "You continually try to create negative issues in any way possible creating a hostile situation against your employer trying to find an angle or opportunity to benefit you."  As an aside, Plaintiff Kleinsmith was only informed that he would not be able to attend the McDonald's Headquarters meeting the day before.  Plaintiff Kleinsmith believed that he would have attended the meeting while planning the Chicago Trip.

w.      On June 15, 2024, Hughes falsely claimed that Plaintiff Kleinsmith was filling up his gas tank the day before going on vacation, which vacation was not until June 19.

x.      On July 1, 2024, Mr. Ferraro asked Plaintiff Kleinsmith to work on July 4.  Plaintiff Kleinsmith informed Mr. Ferraro that he had plans for July 4 and that he had submitted a request off on February 25, 2024.  Mr. Ferraro's response was that he could not approve a time off request five (5) months in advance, which never happened. If it had happened, Plaintiff Kleinsmith would have asked when an acceptable window is to put a request in and would have marked it down on a calendar and/or scheduled an email with the request off.  Plaintiff Kleinsmith also submitted his schedule for the week

of July 1 on June 26.  Other time off requests made by Plaintiff Kleinsmith from March through August were never approved.

y.      On July 2, 2024, Mr. Ferraro continued to ask Plaintiff Kleinsmith if he could work on July 4 to which Plaintiff Kleinsmith responded that he had plans to be away on July 4.  Plaintiff Kleinsmith had a call with Mr. Ferraro asking for direction on his schedule for July 3 and 4.  The only response he received was to not take his paid day off that week.

z.      On July 5, 2024, Mr. Ferraro took away Plaintiff Kleinsmith's ability to make his own schedule.  Plaintiff Kleinsmith then needed to go to different stores to administer exams and teach classes, as needed.  Plaintiff Kleinsmith was scheduled to work on the floor the entire month of July with undesirable shifts, which were outside of the shifts both operation supervisors asked Plaintiff Kleinsmith to assist them with.  This made it difficult for Plaintiff Kleinsmith to get any work done besides running positions on the floor.

aa.      On July 8, 2024, Plaintiff Kleinsmith e-mailed Mr. Ferraro inquiring why he was being punished and requested time to talk to discuss his position and schedule.  Plaintiff Kleinsmith received no answer and resent this email on July 22, 2024.

bb.      On July 16, 2024, Plaintiff Kleinsmith's daily text messages were now classified as "clocking in," even though Plaintiff Kleinsmith is salaried.

cc.      On July 19, 2024, Mr. Ferraro came to the store Plaintiff Kleinsmith was working at after Hughes said the service times "sucked."  When Mr. Ferraro showed up with another supervisor, he began to go after Plaintiff Kleinsmith for

the poor performance of the store even though the store was missing 50% of the scheduled hours that day and was severely short staffed.

        dd.     On July 23, 2024, Plaintiff Kleinsmith confronted Mr. Ferraro about approving the Colorado Tech University (CTU) Letters of Credit (LOC) for their employees.   Mr. Ferraro said that he had approved all of them.  Plaintiff Kleinsmith then called Mr. Ferraro out and told him that he, in fact, did not as Plaintiff Kleinsmith was still waiting on his LOC to be approved, which he submitted on July 3.  This occurred on the deadline date and the day that classes started for the session.

        ee.     On July 25, 2024, Mr. Ferraro texted Plaintiff Kleinsmith asking him to send him his time off requests for August, which were already in his inbox.  As per the schedule that Mr. Ferraro made for Plaintiff Kleinsmith, he was not working that day.

        ff.     On July 25, 2024, Hughes sent an email denying Kleinsmith's CTU LOC falsely stating Plaintiff Kleinsmith's poor performance resulted in the denial of his CTU LOC.

        gg.     On July 30, 2024, Hughes and Mr. Ferraro had a conversation with Plaintiff Kleinsmith about his schedule and position in the company.  Plaintiff Kleinsmith stated that it was difficult to get any work done when he was scheduled outside of hours that the stores perform administrative work and rely on Plaintiff Kleinsmith's assistance/direction.  Plaintiff Kleinsmith also stated that none of his duties could be completed when he is sent to work at a store for operations because there is not enough staff most days to take him off the floor due to labor constraints and staffing issues.

hh.     Hughes stated to Plaintiff Kleinsmith that he knew that another gay owner operator couple had "wined and dined you, flew you out to California for an interview" and you didn't get the job.  This was not any information that Plaintiff Kleinsmith had given to him or anyone in the company.  He also stated that two other Owner Operators said that Plaintiff Kleinsmith was trouble and that they would not hire him if he had applied within their organizations.  Plaintiff Kleinsmith never tried to apply with any other Owner Operators in the area.

ii.     On July 30, 2024, Hughes suggested that Plaintiff Kleinsmith take a look at how he was acting and performing in the company and to consider an attitude and performance reset on himself.

jj.     On August 1, 2024, Hughes claimed that Plaintiff Kleinsmith had done nothing in his new customer service supervisor position.  Plaintiff Kleinsmith started working on addressing these issues, creating a tracking system to provide the stores with live data, and gave direction to the store managers on the items they need to focus on in order to start eliminating complaints by executing McDonald's procedures as designed.  Plaintiff Kleinsmith also asked for items required so that he could take care of items that Hughes wanted him to work on.  These requests were ignored.

kk.     On August 1, 2024, Hughes claimed that Plaintiff Kleinsmith had ghosted the Director and President when he was off from work, or had addressed the items that he was asked to work on.  In July, Plaintiff Kleinsmith spent a majority of his shifts running stores and covering managers and another supervisor in this supervisor's store.  Plaintiff Kleinsmith had even taken an important Paylocity (new payroll) meeting

while running the floor.  This resulted in little time to work on tasks or even review the numerous emails he receives daily.

ll.    On August 4, 2024, Hughes invited the supervisor team to his country club for lunch and a meeting.  Supervisor Josh Purcell and Plaintiff Kleinsmith were going on vacation that same day, August 5, and would not be able to attend. Hughes sent out a text saying "Josh, I know you will be out on vacation.  It's a great lunch overlooking pool and golf course as you know…" inviting him to join, but made no mention of Plaintiff Kleinsmith and did not send him a text.

mm.    On August 8, 2024, Plaintiff Kleinsmith was forced to withdraw from CTU as he was unable to attend classes for this session due to Hughes' denying his LOC.  No other managers had their LOC denied and were unable to attend CTU.

19.    Hughes has engaged in the above retaliatory conduct, he told Plaintiff Kleinsmith that it will cease if Plaintiff Kleinsmith agrees to "go back to normal and return to him."

20.    Hughes offered Plaintiff Kleinsmith material benefits to return to the relationship, such as ownership in Defendant HI, to buy Plaintiff Kleinsmith a Tesla on his birthday, $500,000 cash, full condominium ownership, and a return to a lavish lifestyle.

21.    The foregoing actions created a discriminatory workplace based on Plaintiff Kleinsmith's sexual orientation, hostile work environment, retaliation, and materially altered Plaintiff's employment, and caused Plaintiff emotional and financial harm.

22.    Employees of Defendant HI who were straight did not suffer similar threats, working conditions, discipline, or harassing conduct

## COUNT I
## Sexual Harassment and Hostile Work Environment in Violation of Title VII

23.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 22 of this Complaint as they are fully set forth here.

24.    Defendant subjected Plaintiff to severe and pervasive sexual harassment based on sex and sexual orientation that unreasonably interfered with Plaintiff's work environment and altered the conditions of his employment.

25.    The harassment included, but was not limited to:

a.    Repeated sexual advances and coercive comments by Defendant's Owner/Operator, Hughes;

b.    Retaliatory threats following the end of a sexual relationship with Hughes;

c.    Explicit sexual remarks and innuendo in workplace communications;

d.    Intrusive comments about Plaintiff's personal life and sexual orientation;

e.    Conditioning material benefits or continued employment on Plaintiff's willingness to reengage in a sexual or romantic relationship with Hughes.

26.    Defendant's conduct created a hostile work environment that was both objectively and subjectively offensive and abusive.

27.    Defendant knew or should have known about the harassment and failed to take prompt and effective remedial action.

28.    As a direct and proximate result, Plaintiff suffered emotional distress, loss of enjoyment of life, lost earnings, and other damages.

## COUNT II
## Discrimination in Violation of Title VII of the Civil Rights Act of 1964

29.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 28 of this Complaint as if they are fully set forth here.

30.    Plaintiff is a member of a protected class under Title VII, as a gay male.

31.    Plaintiff was qualified for his position and performed his job duties in a satisfactory manner.

32.    Plaintiff was subjected to disparate treatment and adverse employment actions on the basis of his sex and sexual orientation, including but not limited to:

    a.    Reduction in benefits;

    b.    Withholding of bonuses and reimbursements;

    c.    Unfounded write-ups and discipline;

    d.    Denial of promotional opportunities and raises; and

    e.    Targeted scrutiny and micromanagement not applied to heterosexual comparators.

33.    Defendant treated similarly situated heterosexual employees more favorably than Plaintiff under similar circumstances.

34.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered damages including emotional distress, loss of income, reputational harm, and diminished career opportunities.

### COUNT III
### Retaliation in Violation of Title VII

35.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 43 of this Complaint as if those paragraphs are fully set forth here.

36.     Plaintiff engaged in protected activity under Title VII, including:

       a.     Terminating a coerced sexual relationship with a superior; and

       b.     Filing a Charge of Discrimination with the EEOC and PHRC on or about July 26, 2023.

37.     Defendant retaliated against Plaintiff for engaging in protected activity, including but not limited to:

       a.     Assignment to undesirable shifts and locations;

       b.     Increased scrutiny and disciplinary threats;

       c.     Denial of time off, bonuses, raises, and educational assistance;

       d.     False performance allegations; and

       e.     Threats, intimidation, and efforts to force Plaintiff's resignation.

38.     The adverse actions occurred shortly after Plaintiff's protected activity and were motivated by retaliatory animus.

39.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages including economic loss, emotional harm, and reputational injury.

### COUNT IV
### Discrimination and Retaliation in Violation of the Pennsylvania Human Relations Act (PHRA)

40.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.    Defendant's conduct as described above constitutes unlawful discrimination, harassment, and retaliation in violation of the PHRA, which prohibits such conduct based on sex and sexual orientation.

42.    Plaintiff has satisfied all administrative prerequisites under the PHRA.

50. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages as previously alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award the following relief:

a. Back pay, front pay, lost benefits, and other compensation denied by reason of Defendants' violations;

b. Compensatory damages for emotional distress, humiliation, and reputational harm;

c. Punitive damages;

d. Reasonable attorneys' fees and costs under 42 U.S.C. § 2000e-5(k);

e. Pre-judgment and post-judgment interest; and

f. Such other relief as this Court deems just and proper.

### JURY TRIAL DEMAND

43.    Plaintiff demands a trial by jury on all claims so triable.

BROUGHAL & DeVITO, L.L.P.

Date:    07.08.25                By:    _____

**John S. Harrison, Esquire**
Attorney I.D. No. 53864
**Erika A. Farkas, Esquire**
Attorney I.D. No. 313686
38 W. Market Street
Bethlehem, PA 18018
Telephone No.:  (610) 865-3664
Facsimile No.:  (610) 865-0969
johnharrison@broughal-devito.com
erikafarkas@broughal-devito.com
*Attorneys for Plaintiff*